PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Proposed Class

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KENIA GONZALEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HILTON GRAND VACATIONS, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 3:26-cv-01337-AJB-VET<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF B&P CODE SECTION 17529.5 (UNLAWFUL SPAMMING)** |

## I. NATURE OF ACTION

1. Defendant Hilton Grand Vacations Inc. ("HGVI" or "Defendant") flagrantly violates consumer protection laws. Its business model relies on aggressive, high-pressure sales tactics marketed through advertisements engineered to manufacture urgency and distort value. Rather than present straightforward pricing and availability, HGVI deploys countdown timers, exaggerated discount claims, and other artificial scarcity cues to pressure consumers into impulsive purchases. These practices are not incidental—they are central to HGVI's strategy of driving attendance at its hard-sell timeshare presentations through misleading, urgency-driven promotions.

2. As relevant here, HGVI is also a ***relentless*** spammer. It floods consumer inboxes with unsolicited, deceptive, and unwanted messages that employ all of the tactics forbidden by California law: falsified header information, spoofed and nonsensical sender domains, deceptive subject lines, and visually identical but non-standard Unicode characters (e.g., " o ," " A ," " e "), all designed to evade email spam filters and deceive consumers.

3. Plaintiff Kenia Gonzalez ("Plaintiff") recently received numerous spam e-mails promoting Defendant's timeshares. Each of the spam messages came from a spoofed, nonsensical address and contained a forged domain untraceable to Defendant.

4. The messages were also both deceptive and misleading. They contained prominent language that "OFFER ENDS IN" a limited amount of time — reinforced by a countdown clock — when in fact the offer is an ongoing, evergreen solicitation. The use of a ticking countdown falsely conveys urgency and scarcity, signaling to consumers that they must act immediately or lose access to the advertised pricing.

5. In short, Defendant has facially, flagrantly, and repeatedly violated California law. Fortunately, California's robust Anti-Spam Law imposes both strict liability and liquidated damages on companies like HGVI that benefit from deceptive unsolicited commercial e-mail advertisements (i.e., "spam"). It dispenses with the

requirement of proving actual damages, intent, or scienter, and imposes liability on advertisers for the actions of their affiliate marketers.[1]

## II. **JURISDICTION AND VENUE**

6. Plaintiff is a San Diego County, California resident and citizen who received spam e-mail from Defendant while in San Diego County, California and opened them while in San Diego County, California.

7. Defendant is a timeshare operator incorporated in Delaware with its principal place of business in Florida. As such, Defendant is a citizen of Delaware and Florida.

8. This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because Plaintiff and Defendant are citizens of different states, Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Florida. Indeed, based upon publicly available information, the class is believed to include over 100,000 members and the amount in controversy is believed to exceed $100 million.

9. Defendant is subject to jurisdiction under California's "long-arm" statute because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States" and because this lawsuit arises out of Defendant's contacts with California consumers. In fact, Defendant's own website boasts about its many properties in California. *See*

---

[1] *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (Section 17529.5 "impos[es] strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails"); *Id.* at 822 (Section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); Id at 821 ("Section 17529.5 … does not include any 'scienter' or intent requirement"); *Id.* at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails."

https://www.hiltongrandvacations.com/en/resorts-and-destinations/california.

10. Defendant has purposefully availed itself of the privilege of conducting business in California by systematically marketing, advertising, and selling its products and services to California residents, including through targeted electronic communications such as the emails at issue in this case. Defendant knew or should have known that its conduct would have consequences in California, where Plaintiff resides and received the unlawful emails. Plaintiff's claims arise directly out of and relate to Defendant's California-directed activities, including its transmission of deceptive commercial emails to California consumers. The exercise of personal jurisdiction over Defendant therefore comports with traditional notions of fair play and substantial justice because Defendant has deliberately engaged in significant activities within California and has created continuing obligations with California residents, such that it should reasonably anticipate being haled into court in this forum.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) in this judicial district because a substantial part of the events giving rise to the claim occurred in this judicial district. Specifically, Plaintiff received the violating spam emails within this judicial district.

## III. <u>FACTUAL ALLEGATIONS</u>

12. Plaintiff is a resident and citizen of San Diego County, California who owns the e-mail address kg92_pulguita@yahoo.com.

13. Defendant deliberately outsources its timeshare marketing to third-party affiliate marketers to reap the benefits of large-scale unlawful spamming. It financially incentivizes these affiliates — paying them on a per-lead or per-conversion basis — to flood inboxes with deceptive timeshare advertisements, knowing that aggressive, non-consensual email campaigns generate sign-ups. These affiliates are not rogue actors; they are integral to Defendant's customer-acquisition strategy and are compensated precisely because spam works.

14. By structuring its marketing this way, HGVI attempts to enjoy the profits of illegal email campaigns while plausibly denying responsibility for the very misconduct it knowingly authorizes, directs, and benefits from—conduct squarely prohibited by California Business & Professions Code § 17529.5.

15. Defendant, through its affiliates, relentlessly spams Plaintiff and hundreds of thousands of other Californians. Earlier this year, Plaintiff started receiving spam e-mail from one of Defendant's affiliate marketers. As just one example of many, on Thursday, February 26, 2026, Plaintiff received a spam e-mail from the spoofed address celeste@ame-delivery.artmakingenuity.com. The subject line of the spam message read "3 NIGHT GETAWAY UP TO 75% OFF." A true and correct copy of the spam is attached hereto as **Exhibit "A".**

16. The spam also contained a prominent "countdown clock", shown below, that purported to actively detail the time left for plaintiff to claim the unique deal:




17. The email also contains hidden HTML code, none of which appear in the visible body of the message. For example, the text contains a zero-width Unicode character (U+200B) placed immediately before the text "OFFER ENDS IN." This is a classic hallmark of spam so it looks normal to a human, but the underlying string is slightly different and is used to evade pattern-based spam filters.

18. The e-mail also contains a 1×1 tracking pixel pointing to a tracking host (track.senderbulk.com), which is invisible on screen but fires when the email is opened. This was discovered by examining the email's underlying HTML source code, which exposes content intentionally concealed from the recipient's normal view.

19. The spam was sent from a "spoofed" e-mail address to conceal the identity of the true sender. Indeed, after receiving the e-mail, Plaintiff searched the publicly available WHOIS database to identify the sender via the owner of the domain used in the "From" field (ame-delivery.artmakingenuity.com). According to the WHOIS database (found at https://lookup.icann.org/en/lookup), there is no such registered domain.

20. The subject line of the spam **("3 NIGHT GETAWAY UP TO 75% OFF")** is deceptive under California law because it conveys a false sense of a genuine, time-limited price reduction from a bona fide reference price, when in reality the offer is evergreen and not tied to any actual prior or prevailing price. Under California's strike-through pricing principles codified at Cal. Bus. & Prof. Code § 17501, a represented discount must be based on a real former price at which the product was offered for a reasonable period of time. The "up to 75% off" claim implies that consumers are receiving a substantial discount off a legitimate baseline price and that the savings are meaningful and possibly temporary. Here, however, the offer is continuously available and not anchored to any genuine prior price. As such, the "discount" is illusory — it is simply the regular price dressed up as a promotion. Courts have repeatedly held that such perpetual or fabricated discounts are misleading because they falsely signal urgency, exclusivity, and economic benefit, thereby inducing consumers to act under the mistaken belief they are receiving a special deal when they are not. The spam is also misleading because it prominently features a "75% OFF" subject line and a live countdown clock implying that the promotional pricing is time-sensitive, when in reality the offer is an ongoing offer that is continuously available. The net impression conveyed to consumers is that they must act immediately or lose access to a uniquely discounted opportunity, but

in reality the offer remains available before and after the purported expiration, and the countdown does not reflect a genuine deadline — it manufactures artificial scarcity. Here, the countdown clock functions not as an informational disclosure but as a psychological pressure device, reinforcing a "now or never" narrative for an offer that, in practice, does not expire.

21. The misrepresentations in both the subject line and body are material because they go directly to the core economic inducement driving the consumer's decision to purchase. A representation that a vacation package is "75% off" communicates that the consumer is receiving a substantial, time-sensitive discount relative to a bona fide prevailing price; if that discount is not genuine, it alters the perceived value of the transaction. Likewise, a countdown clock signaling that the "offer ends" imminently conveys scarcity and forces an immediate purchase decision to avoid losing the deal. Time pressure and savings claims are among the most powerful drivers of consumer behavior, and the law recognizes that false discounting and artificial urgency distort the ordinary deliberative process by inducing consumers to act when they otherwise might comparison shop, investigate alternatives, or decline altogether. Because both statements materially affect perceived price advantage and purchasing timing, they are inherently likely to influence a reasonable consumer's decision and are therefore material.

22. The spam was an "Unsolicited Commercial e-mail advertisement" because plaintiff had no pre-existing relationship with Defendant and because the e-mail was initiated for the purpose of advertising the extension of credit. *See* Bus. & Prof. Code § 17529.1(c).

23. Plaintiff never gave "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents. Indeed, "direct consent" under the statute requires a unique level of specificity and clarity that must be informed, knowing, and explicit — meaning that consumers must be told clearly that they are

agreeing to receive advertising emails from a particular sender, and for what purpose, at the time they provide their email address.

24. The above spam violates Bus. & Prof. Code § 17529.5 in three separate and distinct ways:

a. **Unauthorized and Deceptive Use of a Domain Name in Violation of Section 17529.5(a)(1).** A domain name is the unique Internet address used to identify the origin of an email transmission. It functions as a digital signature and is intended to enable recipients to verify the sender's identity. The email's use of ame-delivery.artmakingenuity.com constitutes forged or misrepresented header information within the meaning of Cal. Bus. & Prof. Code § 17529.5(a)(2) because the domain presented in the "From" line does not correspond to a legitimately registered, independently verifiable sending entity. Indeed, after receiving the e-mail, Plaintiff was confused and thought it related to an art and craft opportunity. Intrigued, she searched the ICANN registry, but the domain was not traceable to the Defendant.

b. **Misrepresented Header Information In Violation of Section 17529.5(a)(2).** An email header is the portion of an electronic mail message that contains the routing, addressing, and technical information necessary for the message to be transmitted and delivered across the internet. Unlike the visible body of an email, the header records the path the message takes from the sender to the recipient and includes fields such as the "From," "To," "Date," "Subject," and the originating Internet Protocol (IP) address. The header serves as the digital equivalent of a postmark and return address on a physical letter—it discloses who sent the message, the servers through which it traveled, and how it reached the recipient's inbox. The email contains forged and deceptive header information because the "From" domain —

ame-delivery.artmakingenuity.com— tricked Plaintiff into believing that the spam was a legitimate e-mail relating to arts and crafts, but it was not.

c. **<u>Deceptive Subject Line and Contents in Violation of Section 17529.5(a)(3).</u>** This section prohibits deceptive subject lines and imposes an affirmative duty of accuracy in the material facts contained in the content of commercial e-mail. The misrepresentations in both the subject line and body are material because they go directly to the core economic inducement driving the consumer's decision to purchase. A representation that a vacation package is "75% off" communicates that the consumer is receiving a substantial, time-sensitive discount relative to a bona fide prevailing price; if that discount is not genuine, it alters the perceived value of the transaction. Likewise, a countdown clock signaling that the "offer ends" imminently conveys scarcity and forces an immediate purchase decision to avoid losing the deal. Time pressure and savings claims are among the most powerful drivers of consumer behavior, and the law recognizes that false discounting and artificial urgency distort the ordinary deliberative process by inducing consumers to act when they otherwise might comparison shop, investigate alternatives, or decline altogether. Because both statements materially affect perceived price advantage and purchasing timing, they are inherently likely to influence a reasonable consumer's decision and are therefore material.

25. Under Business & Professions Code §17529.5(b)(1)(B)(ii), each unlawful email constitutes a separate "incident" for purposes of statutory damages. The statute is structured to treat every deceptive or misleading email as an independent violation because each transmission represents a distinct act of deception and a separate invasion of the recipient's privacy and inbox. The Legislature expressly adopted this "per email" approach to deter mass spamming campaigns, recognizing that spam's harm multiplies with each delivery, regardless of whether the content is identical.

26. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct. Plaintiff spent valuable time and attention identifying, reading, and searching for an illusory unique offer that did not exist; searching the WHOIS database to try to find out who sent the e-mail; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage, and battery life.

27. The unauthorized domain name, misleading header and subject line also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful emails and are redressable by statutory and injunctive relief.

28. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements. In fact, Defendant actively defies California law.

## IV. <u>CLASS ACTION ALLEGATIONS</u>

29. Plaintiff brings this action on behalf of all persons similarly situated and seek certification of the following class:

> All citizens of California who received any unsolicited commercial e-mail advertising Defendant's services while in California where such email(s) contained: (1) a falsified, misrepresented, or forged domain name; (2) falsified, misrepresented, or forged header information; or (3) misleading subject line or contents in violation of California Business and Professions Code § 17529.5, within the four years preceding the filing of this action.

30. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or

employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

31. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 100,000 members of the Class.

32. **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described in this Complaint.

33. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions and intend to prosecute this action vigorously.

34. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether Defendant sent unsolicited commercial e-mail to Class members; and

b. Whether the e-mails were sent in violation of Business and Professions Code Section 17529.5.

35. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

36. **Ascertainability**. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V. CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

37. Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

38. As shown above, the spam violated all three provisions of Section 17529.5.

39. Defendant is strictly liable for violation of Section 17529.5 for sending each spam and is liable in the amount of $1,000 per spam per class member.

40. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

41. Plaintiff and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that

Plaintiff be designated as class representative, and that undersigned counsel be designated as class counsel;

b. For all available declaratory, legal, and equitable relief including injunctive relief;

c. For statutory damages of $1,000 per violative e-mail;

d. For punitive damages; and

e. For attorneys' fees and costs as allowed by law.

Dated: April 14, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class